**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| ONTRAK, INC., | Case No. 25-11617 LSS |
| Debtor.[1] | **Hearing Date: October 15, 2026 at 10:15 a.m. ET**<br>**Objections Due: October 1, 2026 at 4:00 p.m. ET** |

**CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT REGARDING CERTAIN DIRECTORS, OFFICERS, AND AFFILIATES PURSUANT TO BANKRUPTCY RULE 9019**

Alfred T. Giuliano (the "Trustee"), the Chapter 7 trustee for the estate of Ontrak, Inc. (the "Debtor"),[2] by and through his counsel, Fox Rothschild LLP, respectfully requests the entry of an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreement (the "Settlement Agreement") between (1) the Trustee, on behalf of the Debtors' estate, (2) Irving S. Braun ("Braun"), the plaintiff in a shareholder securities case captioned, *Braun v. Ontrak, Inc. et al.*, No. 22STCV07174 (Cal. Super., Los Angeles County) (the "Securities Case"), (3) Terren S. Peizer ("Peizer"), (4) Acuitas Group Holdings LLC and its affiliates, including Acuitas Capital LLC (collectively, "Acuitas"), and (5) Brandon H. Laverne, Christopher Shirley, Richard A. Berman, Sharon Gabrielson, Gustavo Giraldo, Katherine B. Quinn, Robert Rebak, Diane Seloff, Michael Sherman, Edward Zecchini, Jonathan Mayhew, Curtis Medeiros, and Robert Newton (collectively, the "Non-Peizer D&Os," and together with the Trustee on behalf of the estate and Debtor, Braun, Peizer, and Acuitas, the "Parties"), by and through their counsel. In support of this Motion, the Trustee states as follows:

[1] The last four digits of the Debtor's federal tax identification number are 4853.
[2] The Debtor's service address is 2200 Paseo Verde Parkway # 280, Henderson, NV 89052.

**JURISDICTION**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue of this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicate for the relief sought herein is Rule 9019 of the Bankruptcy Rules.

**BACKGROUND**

4. On August 29, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code before this Court.

5. Prior to the Petition Date, Mr. Braun commenced the Securities Case in the Superior Court for the State of California, Los Angeles County (the "California Superior Court") against the Debtor and certain of the Debtor's former directors and officers.

6. Also prior to the Petition Date, certain other shareholders commenced derivative lawsuits on behalf of the Debtor captioned, *Dutkiewicz v. Acuitas Group Holdings LLC et al.*, No. 2024-0068-NAC (Del. Ch.) ("*Dutkiewicz*")*, Aptor v. Peizer et al.*, No. 2:21-cv-06371 (C.D. Cal.) ("*Aptor*"), and *Vega v. Peizer et al.*, No. 2:22-cv-01873 (C.D. Cal.) ("*Vega*"). These actions alleged fiduciary duty claims, among other claims.

7. On February 25, 2026, the Trustee moved to realign and substitute himself as the plaintiff in the *Dutkiewicz* action which the Delaware Chancery Court granted the next day. As a result, that action is now captioned, *Giuliano v. Acuitas Group Holdings LLC et al.*, No. 2024-0068-NAC (Del. Ch.) ("*Giuliano I*").

8. On July 6, 2026, the Trustee moved to realign and substitute himself as the plaintiff in the *Aptor* action which the United States District Court for the Central District of California

granted on August 6, 2026. As a result, that action is now captioned, *Giuliano v. Peizer et al.*, No. 21-cv-06371 (C.D. Cal.) ("*Giuliano II*").

9. On December 18, 2025, U.S. Bank Trust Company, National Association, as Collateral Agent (the "Collateral Agent"), filed a proof of claim regarding the Collateral Agent's alleged services performed for Acuitas on the Debtor's bankruptcy claim register, No. 34 (the "Original Register Claim"), and filed an amended version of that claim later that same day (the "Amended Register Claim," and together with the Original Register Claim, the "Register Claim"). The Register Claim exceeds $16 million.

10. On March 16, 2026, the Parties mediated about a global resolution of their disputes.

11. The Parties now desire to resolve, on a consensual basis and subject to the approval of this Court and of the California Superior Court, their disputes pursuant to the Settlement Agreement attached as **Exhibit A**.

## THE SETTLEMENT AGREEMENT

12. The Parties have engaged in good-faith, arm's-length negotiations and have agreed to the Settlement Agreement, a copy of which is attached hereto as **Exhibit A** and is incorporated herein by reference. At a high level, the Settlement Agreement results in (1) the Trustee and also Mr. Braun on behalf of the certified class in the Securities Case each receiving at least Two Million Eight Hundred Fifty Thousand Dollars ($2,850,000.00), plus 50% of savings on remaining defense costs, (2) releases all of Acuitas' liens against any of the Debtor's assets, and (3) withdrawal of the Register Claim, which exceeds $16 million.

## RELIEF REQUESTED

13. By this Motion, the Trustee seeks entry of an order approving the Settlement Agreement attached hereto as **Exhibit A** pursuant to Bankruptcy Rule 9019.

## BASIS FOR RELIEF

14. Bankruptcy favors compromises. *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). A court may approve a compromise after notice and a hearing, with notice given to "creditors, the United States trustee, the debtor . . . and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a); *see also id* at 393 & 396. Courts normally defer to a trustee's business judgment regarding a compromise if there is a legitimate business justification for it. *Martin*, 91 F.3d at 395. A trustee's showing of a legitimate business justification need not be unduly exhaustive; instead, a trustee is "simply required to justify the proposed disposition with sound business reasons[.]" *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). One such reason and justification can be a trustee's duty to maximize estate value. *See Martin*, 91 F.3d at 394.

15. To determine whether to approve a compromise under Bankruptcy Rule 9019, a court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* at 393. To this end, courts should consider four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.*

16. Here, the Court should approve the Settlement Agreement because it is supported by sound business reasons, the terms of the Settlement Agreement are reasonable, and the four *Martin* factors all weigh in favor of approval.

17. First, the "probability of success in litigation" is uncertain based on the nature of the claims belonging to the estate, thus weighing in favor of approving the Settlement Agreement. *Id*. For example, in *Giuliano I*, the Trustee controls claims centered around a "*Brophy*" claim—a type of breach of fiduciary duty claim based on alleged insider trading. *See Giuliano I*, Dkt. 1 at

¶¶ 192-99. Delaware law governs the probability of success of that claim because the Debtor was a Delaware corporation. *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271, 291 (Del. Ch.), *aff'd*, 126 A.3d 1115 (Del. 2015). While the Trustee believes that the underlying facts and merits of the claims are strong, Delaware law "sets the bar for stating a claim for breach of fiduciary duty on insider trading very high." *Cent. Laborers' Pension Fund v. Karp*, 349 A.3d 1165, 1184 (Del. Ch. 2025) (internal quotations omitted). The insiders here accused of insider trading also made their trades pursuant to 10b5-1 plans, and the presence of such plans may militate against liability. *See In re Plug Power S'holder Derivative Litig.*, 2025 WL 1277166, at *10 (Del. Ch. May 2, 2025) (relying on pre-existing 10b5-1 plans to find that certain defendants did not face a substantial likelihood of liability). Other prepetition derivative claims which are now assets of the estate also center on alleged insider trading and the scienter of the defendants, which must be proven. On the whole, the "probability of success in litigation" is uncertain, so this factor weighs in favor of approving the Settlement Agreement—delivering at least $2.85 million into the estate and releasing more than 80% of the current claim pool.

18. Second, the "likely difficulties in collection" also weigh in favor of approving the Settlement Agreement. There are two parts to this analysis. First, the Non-Peizer D&Os' contribution will come from Debtor's directors' and officers' liability insurance policies covering those individuals. Those policies are declining policies, so the more defendants incur in defense costs, the less money is available to collect. The Settlement Agreement makes the vast majority of the remainder of those policies available for payment in the near term. In contrast, if the Settlement Agreement is not approved, defense costs will consume the remainder of the policies, leaving years of litigation ahead for the estate and only the defendants' personal assets upon which to collect any judgment. Further, Mr. Peizer has agreed to pay his contribution personally, making his cash

available in the near term, too. If the Settlement Agreement is not approved, his defense costs would also come out of the declining policies, and his assets appear to mostly be in Puerto Rico. The Settlement Agreement provides for the collection of concrete cash in the near term, weighing in favor of approving the Settlement Agreement.

19. Third, "the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it" has an analysis similar to the first two factors above, weighing in favor of approving the Settlement Agreement. The estate's claims centered on insider trading are complex, requiring a detailed analysis of circumstantial evidence and then proving the same. The expense, inconvenience, and delay necessarily attending those claims include litigation currently in three different courts and years of arguments, discovery, briefing, and trial on the horizon. The Settlement Agreement, in contrast, would avoid that complexity, expense, inconvenience, and delay by delivering a significant influx of cash and a release of more than 80% of the total dollar amount of the claims against the estate in the near term. This factor thus also weighs in favor of approving the Settlement Agreement.

20. Fourth and finally, the "paramount interest of creditors" is best served by approving the Settlement Agreement. In *Martin*, the Third Circuit analyzed this factor by stating: "the interest of all creditors was served by collecting an additional $150,500 as property of the estate." *Martin*, 91 F.3d at 393. The same reasoning applies here. Creditors of the Debtor's estate are receiving two concrete benefits: (1) at least $2.85 million for the estate, and (2) the release of more than $16 million claimed against the estate—significantly increasing the percentage return for each creditor with an allowed claim according to priority order.

21. In sum, the Settlement Agreement delivers a concrete, near-term, value-maximizing compromise of a number of disputes that would otherwise entail material litigation

risk, the depletion of the remaining funds in the Debtor's directors' and officers' liability insurance policies, attendant collection risks, and delay. Through the Settlement Agreement, significant cash would become available for distribution, and a large claim would be released, resulting in greater returns for remaining creditors with allowed claims. The Trustee believes that the value of approving this compromise outweighs the value of the claims compromised for the reasons above. The Settlement Agreement reflects the Trustee's informed business judgment in an arm's-length negotiation with a number of sophisticated parties based on sound business reasons. His duty to maximize estate value, along with the other factors analyzed above, constitute the legitimate business justification for the compromise, which came as a result of good-faith, arm's-length negotiations between sophisticated parties and their counsel. Therefore, the Trustee respectfully requests that the Court approve the Settlement Agreement.

## NOTICE

22. Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Debtor; (c) counsel for the Parties; (d) counsel for the Collateral Agent; and (e) all those persons who have requested notice pursuant to Bankruptcy Rule 2002. The Trustee submits that no further notice is required and requests that the Court determine such notice is adequate and proper.

**CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter the order (i) approving the Settlement Agreement attached as **Exhibit A** pursuant to Bankruptcy Rule 9019 and (ii) granting any other relief that the Court deems appropriate.

Dated: September 2, 2026
Wilmington, DE

**FOX ROTHSCHILD LLP**

By: */s/ Seth A. Niederman*
Seth A. Niederman (Delaware Bar No. 4588)
1201 N. Market Street, Suite 1200
Wilmington, DE 19801
Phone (302) 654-7444/Fax (302) 656-8920
sniederman@foxrothschild.com

-and-

Michael G. Menkowitz, Esquire
Jesse M. Harris, Esquire
Robert H. Eisentrout, Esquire
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA 19103
Phone (215) 299-2000/Fax (215) 299-2150
mmenkowitz@foxrothschild.com
jesseharris@foxrothschild.com
reisentrout@foxrothschild.com

*Attorneys for Alfred T. Giuliano, Chapter 7 Trustee*

**CERTIFICATE OF SERVICE**

I, Seth A. Niederman, hereby certify that the foregoing Motion was served on the parties listed on the attached Service List A via U.S. first class mail, postage prepaid unless otherwise indicated. I also certify that the foregoing Motion was served upon the parties listed on the attached Service List B via U.S. first class mail, postage prepaid. I further certify that the foregoing Motion was served via the Court's CM/ECF electronic filing system on all parties registered and authorized to receive such notice, on September 2, 2026

Dated: September 2, 2026

*/s/ Seth A. Niederman*
Seth A. Niederman (Delaware Bar No. 4588)